United States District Court
Middle District of Florida
Jacksonville Division

**DEREK ZIEGENBEIN,**

*Plaintiff,*

v.                                                            **NO. 3:19-cv-754-J-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

*Defendant.*

---

## Order

Derek Ziegenbein brings this action under 42 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security denying his application for supplemental security income. Under review is a decision by an Administrative Law Judge ("ALJ") dated June 8, 2018. Tr. 24–41. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 27–37, and the parties' briefs, Docs. 20, 21, and not fully repeated here. Ziegenbein argues the ALJ erred (1) in finding his chronic liver disease does not meet Listing 5.05A; (2) in failing to further develop the record; and (3) in considering the effects of his pain. Doc. 20.

## I.    Background

Ziegenbein was born in 1973. Tr. 110. He has a master's degree, Tr. 88, and experience as a database design analyst, Tr. 98, 252. He stopped working on a sustained basis in 2006. Tr. 88, 230. He applied for benefits on October 6, 2015, Tr. 109, alleging he had become disabled in 2006 from cirrhosis, ascites, esophageal varices, pancreatitis, and diabetes mellitus, Tr. 110, 251. The pertinent time period is October 26, 2015 (the date of his application), to June 8, 2018 (the date of the ALJ's decision). Tr. 37, 109; *see* 20 C.F.R. §§ 416.330, 416.335 (provisions discussing effective period).

After failing at the initial and reconsideration levels, Ziegenbein requested an administrative hearing before the ALJ. Tr. 165–67. The ALJ conducted a hearing at which Ziegenbein testified. Tr. 78–108.

The ALJ found Ziegenbein has severe impairments of disorders of the gastrointestinal system, chronic liver disease, and esophagus disease, Tr. 29, and non-severe impairments of diabetes mellitus and peripheral neuropathy, Tr. 30.

The ALJ found Ziegenbein has no impairment or combination of impairments that meets or equals the severity of any listed impairment. Tr. 30. The ALJ observed no physician reported findings suggesting otherwise. Tr. 35. The ALJ relied on the opinion of Larry Meade, D.O., a state-agency medical consultant who had considered Listing 5.05 ("Chronic liver disease"). Tr. 30.

The ALJ found Ziegenbein has a residual functional capacity ("RFC") to perform light work with additional limitations: he must have no concentrated exposure to dangerous machinery and unprotected heights; he must perform no more than simple, routine, repetitive tasks; he can sit for approximately six hours in an eight-hour workday; and he can stand and walk for a total of six hours in an eight-hour workday. Tr. 30.

Based on a vocational expert's testimony, the ALJ found Ziegenbein could not perform his past relevant work in database design but could work as a sorter, marker, and assembler, and those jobs exist in significant numbers in the national economy. Tr. 36–37.

The ALJ therefore found no disability. Tr. 37.

## II.    Standard of Review

A court's review of an ALJ's decision is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied.

42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.* The Court is without authority to reweigh evidence, make credibility determinations, or substitute its judgment for the ALJ's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## III. Law and Analysis

### A. *The ALJ did not err in finding Ziegenbein does not meet Listing 5.05A.*

Ziegenbein argues the ALJ erred in finding his chronic liver disease does not meet Listing 5.05A. Doc. 20 at 13–17. The Commissioner responds that Ziegenbein does not satisfy the Listing 5.05A criteria and the ALJ identified substantial evidence supporting the finding. Doc. 21 at 5–9.

The Listing of Impairments "describes for each of the major body systems impairments [the Social Security Administration ("SSA")] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a).

An ALJ must consider whether the claimant meets or equals a listing in the Listing of Impairments. *Id.* § 416.920(a)(4)(iii). To meet a listing, an impairment must satisfy all criteria in the listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530. To equal a listing, an impairment must "at least equal in severity and duration . . . the criteria of any listed impairment." 20 C.F.R. § 416.926(a). If a claimant meets or equals a listing, he is disabled, and progression through the sequential evaluation process ends. *Id.* § 416.920(a)(4)(iii). The claimant has the burden of proving his impairment meets or equals a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

3

Listing 5.05 concerns chronic liver disease. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.05. To satisfy paragraph A of Listing 5.05, a claimant must show:

> Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood. Consider under disability for 1 year following the last documented transfusion; thereafter, evaluate the residual impairment(s).

20 C.F.R. pt. 404, subpt. P, app. 1, § 5.05A. Section 5.00D5 states, "Under 5.05A, *hemodynamic instability* is diagnosed with signs such as pallor (pale skin), diaphoresis (profuse perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting). Hemorrhaging that results in hemodynamic instability is potentially life-threatening and therefore requires hospitalization for transfusion and supportive care." *Id.* § 5.00D5 (emphasis in original).

Ziegenbein shows no error. After hearing counsel's argument on Listing 5.05A at the administrative hearing, Tr. 80–84, the ALJ found Ziegenbein does not meet or equal any listing, including, specifically, Listing 5.05, Tr. 30. Substantial evidence supports that finding.

In discussing Ziegenbein's chronic liver disease, the ALJ observed that a "March 2018 upper gastrointestinal endoscopy revealed esophageal varices without bleeding, portal hypertension, and other diseases of the stomach and duodenum, such as gastritis, without bleeding (Ex. 13F)." Tr. 34. The ALJ noted that Dr. Meade reviewed the file and concluded that Ziegenbein's impairments, considered singly or in combination, do not meet or equal any listing, including, specifically, Listing 5.05. Tr. 30, 124–29. Dr. Meade reviewed the file in April 2016, and discussed a July 2015 hospitalization, Tr. 124–25, that fails to show satisfaction of the Listing 5.05A criteria.

4

Ziegenbein points to records showing variceal bleeding in May 2017, Doc. 20 at 11, 13 (citing Tr. 1415, 1419), but, as the Commissioner observes, Doc. 21 at 7, Ziegenbein points to no evidence of diagnostic imaging that demonstrate hemorrhaging resulting in hemodynamic instability requiring hospitalization for transfusion of at least two units of blood, Doc. 20 at 14. Ziegenbein points to the July 2015 hospitalization to argue he suffered the required hemodynamic instability, Doc. 20 at 14–15, but diagnostic imaging from that hospitalization reveal no hemorrhages, Tr. 307–10, 1099–100, and Ziegenbein points to no evidence he received a transfusion of at least two units of blood.

Ziegenbein argues that Dr. Meade's opinion is not substantial evidence because he provides no specific reason or explanation to support his opinion. Doc. 20 at 15. This argument is unpersuasive. The issue is whether substantial evidence supports the ALJ's decision, not Dr. Meade's opinion. Absent indication that Dr. Meade's opinion is without support, the ALJ could reasonably rely on it.

Ziegenbein argues the ALJ erred in relying on Dr. Meade's assessment because it is "not much more than a regurgitation of the November 17, 2017 'case analyses' provided at the initial level by single decision maker, David Savage, a non-medical source." Doc. 20 at 16. This argument also is unpersuasive. Although Dr. Meade considered evidence the single decision maker considered, Tr. 110–19, there is no indication that Dr. Meade failed to independently evaluate the medical evidence to make his own opinion. Ziegenbein concedes, "Dr. Meade's evaluation lists [his] symptoms, explains the bases for the exertional limitations, and notes the new treatment date of March 5, 2016." *See* Doc. 20 at 16 n.7 (quoted).

Ziegenbein contends his impairments are not within Dr. Meade's area of specialty. Doc. 20 at 16. Though the ALJ had to consider Dr. Meade's specialty when weighing the medical opinions, *see* 20 C.F.R. § 416.927(c)(5), he was not required to explicitly address it in his decision, *see Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). Ziegenbein provides no authority to support that the ALJ

could not rely on Dr. Meade's opinion merely because Dr. Meade does not specialize in impairments of the liver.

Ziegenbein argues the ALJ erred in assigning considerable weight to Dr. Meade's opinion because Dr. Meade did not review the full record before offering his opinion. Doc. 20 at 16–17. This argument likewise is unpersuasive. Dr. Meade reviewed all evidence available when he offered his opinion. The ALJ explained that, in considering his opinion, she "review[ed] the claimant's subsequent treatment history" and "[r]ecent records do not establish conditions that could reasonably be expected to result in additional limitations." Tr. 34. The ALJ detailed the later records:

> The record does not support any additional limitations after the State agency medical consultant reviewed the medical record. For example, Dr. Perez-Downes examined the claimant in December 2016. Dr. Perez-Downes was unsure if the claimant actually had chronic pancreatitis. Dr. Perez-Downes noted that the claimant's IGG4 levels had been normal, as had a pancreatic biopsy (Ex. 10F, page 55). The March 2017 abdominal MRI revealed a pancreatic mass. Dr. Hamlin concluded that there was continued evidence of cholelithiasis, but also that the pancreatic mass remained unchanged from period images with the appearance of mild truncation/atrophy of the tail. No definite lesion was identified. There was diffuse hepatic steatosis, which was new compared to March 2015 images, but the claimant's kidneys, vasculature, adrenal gland, and thorax were normal. The claimant's splenomegaly and splenic siderotic nodules were unchanged. According to Dr. Hamlin, previously described findings could have been related to sequelae of prior or chronic pancreatitis (Ex. 10F, pages 95–97). The March 2018 upper gastrointestinal endoscopy revealed esophageal varices without bleeding, portal hypertension, and other diseases of the stomach and duodenum, such as gastritis, without bleeding (Ex. 13F). Overall, this does not suggest a significant decline in the claimant's condition since Dr. Meade's assessment, and I find these consistent with the conclusion that the claimant is capable of a reduced range of light work.
>
> …
>
> Recent physical examinations and test results are consistent with Dr. Meade's assessment. The record does not contain opinions from treating sources that would contradict Dr. Meade's assessment. Overall, the

record supports the conclusion that the claimant is capable of a reduced range of light work.

Tr. 34, 35.

State-agency medical consultants "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). An ALJ may rely on a state medical consultant's opinion even if the consultant had not reviewed all medical records. *Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 934 (11th Cir. 2017); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013). As the Commissioner observes, Doc. 21 at 9, Ziegenbein submitted no evidence after Dr. Meade reviewed the record that would support that Ziegenbein satisfies the Listing 5.05A criteria.

Ziegenbein contends the ALJ's mention of Dr. Meade's note that his pancreatic mass had remained stable between 2012 and 2014, Tr. 30, is irrelevant because pancreatic mass and lesion evaluations are not criteria to meet Listing 5.05A. Doc. 20 at 17. Ziegenbein shows no error. He alleges disability due in part to pancreatitis, Tr. 251, and Dr. Meade was assessing his overall condition, not only Listing 5.05A.

Remand to reconsider whether Ziegenbein's chronic liver disease meets or equals Listing 5.05A is not warranted.

**B.    *The ALJ did not err in failing to further develop the record.***

Ziegenbein argues the ALJ erred in failing to further develop the record, contending the ALJ should have ordered a consultative exam or the opinion of a medical expert to assess Listing 5.05A. Doc. 20 at 17–18. The Commissioner responds the ALJ has the duty to determine whether a claimant's impairments meet or equal a listing and Ziegenbein is attempting to shift the burden to the ALJ to prove he is not disabled. Doc. 21 at 9–10.

If a claimant's medical sources cannot or will not provide sufficient evidence for a disability determination, the SSA may ask the claimant to undergo a physical or mental consultative examination at the SSA's expense. 20 C.F.R. § 416.917. A consultative examination may be necessary if the evidence is inconsistent, the medical-source records do not contain necessary evidence, necessary evidence cannot be obtained for reasons beyond the claimant's control, necessary technical or specialized evidence is unavailable from the claimant's medical sources, or there is an indication of a change likely to affect the claimant's ability to work, but the severity of the impairment is not established. *Id.* § 416.919a(b). The SSA generally "will not request a consultative examination until [it] ha[s] made every reasonable effort to obtain evidence" from the claimant's medical sources. *Id.* § 416.912(b)(2).

An ALJ must develop a full and fair record, regardless of whether the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). But the claimant must establish disability and must produce evidence to support the claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). If the ALJ fails to fulfill his duty to fully develop the record, remand is warranted if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted).

Ziegenbein fails to show evidentiary gaps resulting in unfairness or clear prejudice. To make the decision, the ALJ had Dr. Meade's opinion and a lengthy medical record. As discussed, Ziegenbein shows no error in the ALJ's reliance on Dr. Meade's opinion.

Remand to obtain a consultative exam is unwarranted.

### C. *The ALJ did not err in considering the effects of Ziegenbein's pain.*

Ziegenbein argues the ALJ erred in considering the effects of his pain. Doc. 20 at 18–22. The Commissioner responds the ALJ specified good reasons, supported by

substantial evidence, in assessing Ziegenbein's statements about pain. Doc. 21 at 10–17.

To determine disability, the SSA considers pain and the extent to which the pain "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). Statements about pain alone cannot establish disability. *Id.* § 416.929(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the pain" and, when considered with the other evidence, would lead to a finding of disability. *Id.* § 416.929(a), (b).

The finding that an impairment could reasonably be expected to produce the pain does not involve a finding on the intensity, persistence, or functionally limiting effects of the pain. *Id.* § 416.929(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the pain affects the claimant. *Id.* § 416.929(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to pain . . . can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the pain affects the ability to work. *Id.* § 416.929(a).

Factors relevant to pain include: daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the pain; treatment for the pain other than medication; and measures used to relieve the pain. *Id.* § 416.929(c)(3).

To determine the extent to which pain affects a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the pain; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between

the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* § 416.929(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about pain.* *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated pain finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ summarized Ziegenbein's testimony:

> The claimant testified that he is unable to maintain employment because his condition requires a significant number of medical appointments. The claimant testified that he is unable to maintain a sleep schedule. Asked about his sleep-related issues, the claimant testified that his medications result in drowsiness. The claimant testified, "If I don't take the medication, it wears me out from the pain." Asked about the alleged onset date, the claimant testified that he lost consciousness while working.

Tr. 33. The ALJ found Ziegenbein's medically determinable impairments could reasonably be expected to cause the alleged symptoms but his statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence "for the reasons explained in this decision." Tr. 34. In the decision, the ALJ summarized the medical record in detail:

- Ziegenbein has a history of chronic pancreatitis causing epigastric pain controlled with pain medications. Tr. 31 (citing Tr. 291).

---

*Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Because the ALJ issued her decision on June 8, 2018, Tr. 37, the new SSR applies here. *Cf. Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply because ALJ issued decision before SSR's effective date).

- In January 2015, his pain symptoms were described as intermittent, with symptoms radiating to the back, with nausea and emesis, exacerbated by food intake. His examination findings were normal, and he was in no distress. Tr. 31 (citing Tr. 290–91).

- In July 2015, he developed jaundice and was admitted to the hospital. With treatment, the jaundice resolved. Tr. 31 (citing Tr. 307–10, 1380).

- In March 2016, a liver ultrasound was negative for abnormalities, and a pancreatic examination resulted in normal findings. Tr. 31 (citing Tr. 1380).

- In June 2016, he reported a fever after spending the weekend at Disney World. He retained a full range of motion in his neck and back, and findings concerning his abdomen, cardiovascular system, and respiratory system, were normal. Tr. 31 (citing Tr. 1514–16).

- The following month, he went to the hospital complaining of epigastric and abdominal pain but stated he received good pain relief with celiac plexus blocks, done once every three months. A physical examination resulted in normal findings concerning his spine, heart, abdomen, shoulder, and extremities. Tr. 32 (citing Tr. 1373–79).

- The same month, an ultrasound and fine needle aspiration revealed a stable pancreatic mass, and a biopsy revealed benign pancreatic tissue. He reported he "feels well." Tr. 31 (citing Tr. 1380).

- In May 2017, he went to the hospital for an acute kidney injury. A renal ultrasound was negative, and an abdomen scan was negative for ascites. X-rays of his abdomen revealed a non-obstructive bowel pattern, and no acute osseous abnormality. A physical examination resulted in normal abdomen, extremities, neurological system, chest, and cardiovascular system findings. His acute kidney injury resolved with IV fluids. Tr. 32, 35 (citing Tr. 1346–49).

- In September 2017, he went to the emergency room because his medications were running out. He denied symptoms and had no complaints. His symptoms responded to his normal course of treatment. Tr. 32 (citing Tr. 1476). This visit was found to be in violation of his opioid agreement with his primary care physician, and he was referred to a pain management clinic. Tr. 32 (citing Tr. 1410).

11

- In October 2017, he presented to the Pain Management Clinic for follow-up treatment with complaints of epigastric pain secondary to chronic pancreatitis, stating his pain symptoms were a "4/10." He experienced occasional flare-ups for no obvious reason. He stated he had been receiving splanchnic blocks for pancreatitis, keeping his pain symptoms under control for at least two months at one time. Recently, his insurer denied approval for the blocks. He therefore received an opioid prescription from his primary care physician. His physical examination was normal. Tr. 32 (citing Tr. 1410–16).

- In November 2017, the hematology clinic noted that he had a history of varices, and a 2015 liver biopsy was negative, with no evidence of cirrhosis. His liver function was normal, and a physical examination was normal. Tr. 32–33 (citing Tr. 1427–31).

- In January 2018, he was seen in the emergency room for narcotic withdrawal. He reported adjustment of his medication was helpful, and he had no complaints. Medication controlled his symptoms. Besides a stomach flu, he had been doing okay. A physical examination was normal. Tr. 33, 35 (citing Tr. 1460, 1549–52).

- In March 2018, he sought treatment at an emergency room after a fall when he became dizzy after taking his pain medication. A physical examination was normal. Tr. 33, 34 (citing Tr. 1597–602).

The ALJ also summarized Ziegenbein's reported daily activities and other evidence:

> I note that the claimant had been prescribed a CPAP machine. However, in 2018 in [sic] was noted that the claimant was not using the machine. The claimant had lost a significant amount of weight and this was noted to improve[] the claimant's sleep apnea issues. At that time, the claimant stated that his activity level had improved. The claimant further stated that he spent time with friends and family, and was hoping to return to work if he underwent splanchnic nerve blocks (Ex. 13F, pages 11-13).

> Currently, the claimant lives in a home, with his fiancé. The claimant's fiancé attends school on a full-time basis. The claimant testified that his home and car have been paid, and he relies on his father to pay his property taxes. The claimant maintains a valid driver's license. The claimant testified that he drives to the pharmacy and the hospital.

Asked about his daily activities, the claimant testified that he enjoys readings [sic] and studying. The claimant testified that he would like to earn his M.B.A. The claimant testified that he relies on his fiancé to perform household chores.

Tr. 33–34.

The ALJ explained he was giving considerable weight to Dr. Meade's opinion that Ziegenbein could perform a reduced range of light work, and recent physical examinations and test results were consistent with Dr. Meade's opinion. Tr. 34–35.

The ALJ concluded:

In sum, though the claimant has an extensive treatment history, treatment entries document a positive response to that treatment, with normal physical examinations and pain symptoms that are controlled with blocks or medication. Dr. Meade concluded that the claimant is capable of light work. Recent physical examinations and test results are consistent with Dr. Meade's assessment. The record does not contain opinions from treating sources that would contradict Dr. Meade's assessment. Overall, the record supports the conclusion that the claimant is capable of a reduced range of light work.

Tr. 35.

Contrary to Ziegenbein's argument, the ALJ applied the correct standards in considering his pain, and substantial evidence supports the pain finding. The ALJ partially accepted Ziegenbein's statements in finding he has the RFC to perform light work but cannot have concentrated exposure to dangerous machinery and unprotected heights and must perform no more than simple, routine, repetitive tasks. Tr. 30. The ALJ clearly articulated the reasons she was rejecting Ziegenbein's statements he can perform no work or that his RFC is more limited, and substantial evidence, listed above, supports that finding.

Ziegenbein argues the ALJ's pain finding is contrary to Dr. Meade's opinion that his statements about the intensity, persistence, and functionally limiting effects of his pain and fatigue symptoms are substantiated by the medical evidence alone.

13

Doc. 20 at 20 (citing Tr. 126). But the ALJ did not fully reject Ziegenbein's subjective complaints of pain, instead crediting his complaints by limiting him to a reduced range of simple and light work, explaining, "I have limited the claimant to no more than simple, routine, repetitive tasks to accommodate potential concentration deficits secondary to pain." Tr. 34; *see also* Tr. 35.

Ziegenbein argues the ALJ's pain finding fails to consider his activities of daily living, the frequency of his symptoms and flare ups, the type and dose of his medications, his emergency room visits, his extensive pain management treatment, and the length of his pain treatment. Doc. 20 at 22. He shows no reversible error. While the evidence he cites could support a contrary pain finding, the Court is without authority to reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *See Moore*, 405 F.3d at 1211. That the ALJ clearly articulated a pain finding supported by substantial evidence suffices.

## IV.   Conclusion

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Derek Ziegenbein and **close** the file.

**Ordered** in Jacksonville, Florida, on September 30, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      Counsel of record